IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTY DAWN KUZNETSOV,          )
                                 )
            Plaintiff,           )
                                 )
        vs.                      )      Civil Action No. 10-7-E
                                 )
MICHAEL J. ASTRUE,               )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
            Defendant.           )

## O R D E R

AND NOW, this 3rd day of January, 2012, upon consideration of Defendant's Motion for Summary Judgment (document No. 11) filed in the above-captioned matter on August 23, 2010,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 9) filed in the above-captioned matter on July 22, 2010,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

## I.  Background

On December 6, 2007, Plaintiff Christy Dawn Kuznetsov filed her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Specifically, Plaintiff claimed that she became disabled on December 1, 2005, due to mood disorder and being underweight. (R. 106).

After being denied initially on March 3, 2008, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on May 21, 2009. (R. 16, 51, 66-68). In a decision dated June 11, 2009, the ALJ denied Plaintiff's request for benefits. (R. 16-26). The Appeals Council declined to review the ALJ's decision on November 13, 2009. (R. 1-4). On January 8, 2010, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.  Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the

2

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A

3

claimant is considered unable to engage in any substantial
gainful activity 'only if his physical or mental impairment or
impairments are of such severity that he is not only unable to
do his previous work but cannot, considering his age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy ....'" Id. at
39 (quoting 42 U.S.C. § 423(d)(2)(A)).

        The Social Security Administration ("SSA") has promulgated
regulations incorporating a five-step sequential evaluation
process for determining whether a claimant is under a disability
as defined by the Act. See 20 C.F.R. § 416.920. In Step One,
the Commissioner must determine whether the claimant is
currently engaging in substantial gainful activity. See 20
C.F.R. § 416.920(b). If so, the disability claim will be
denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If
not, the second step of the process is to determine whether the
claimant is suffering from a severe impairment. See 20 C.F.R. §
416.920(c). "An impairment or combination of impairments is not
severe if it does not significantly limit [the claimant's]
physical or mental ability to do basic work activities." 20
C.F.R. § 416.921(a). If the claimant fails to show that his or
her impairments are "severe," he or she is ineligible for
disability benefits. If the claimant does have a severe
impairment, however, the Commissioner must proceed to Step Three

                                        4

and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

## III. **The ALJ's Decision**

The ALJ applied the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since December 6, 2007, the date Plaintiff filed her application. (R. 18). The ALJ also found that Plaintiff met the second requirement of the process because she had severe impairments in the form of depression and anxiety. He found, however, that Plaintiff's issues with being underweight did not constitute a severe impairment. (R. 18-19). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 19-21).

The ALJ found that Plaintiff retained the RFC to engage in a wide range of work at all exertional levels and was capable of sitting, standing, and/or walking for up to six hours in an eight-hour workday. (R. 21). In addition, he found that Plaintiff was capable of understanding, remembering, carrying out and performing only simple, routine, and repetitive tasks as consistent with unskilled work activity. (R. 21). The ALJ found that Plaintiff was able to satisfy the mental unskilled and physical employment demands for eight-hours per day, forty hours per week. (R. 21-24). Based on this RFC, as well as Plaintiff's age, education, and work history, the ALJ found that Plaintiff has no past relevant work and moved on to Step Five.

6

(R. 24). In lieu of vocational expert ("VE") testimony, the ALJ
used Section 204.00 of the Medical-Vocational Guidelines as a
framework for decision-making and relied on Social Security
Ruling ("SSR") 85-15, 1985 WL 56857, at *1 (1985), to determine
whether or not Plaintiff was disabled. (R. 24-25). The ALJ
concluded that Plaintiff retained the ability to perform the
basic mental demands of unskilled work and that her mental
limitations did not result in deficits which would preclude the
performance of competitive remunerative work requiring the
ability to understand, carry out, and remember simple
instructions and perform simple tasks. (R. 25). The ALJ
further concluded that while Plaintiff's ability to perform work
at all exertional levels had been compromised by nonexertional
limitations, her nonexertional limitations had little or no
effect on the occupational base of unskilled work at all
exertional levels. (R. 25). Accordingly, the ALJ found that
Plaintiff was not disabled. (R. 25).

## IV. **Legal Analysis**

Plaintiff raises several arguments as to why the ALJ erred
in finding that she was not disabled. While the Court does not
fully agree with the majority of the arguments set forth by
Plaintiff, it does agree that remand is warranted in this case.
Specifically, the Court finds that the ALJ failed properly to
relate SSR 85-15 to Plaintiff's specific nonexertional

limitations insofar as he failed to make explicit how SSR 85-15 is probative as to the way in which Plaintiff's particular mental limitations impact her occupational job base. Accordingly, the Court will remand the case for further consideration.

Plaintiff argues that the ALJ erred at the last step of the process by improperly relying on the Medical-Vocational Guidelines ("the Grids") and SSR 85-15 in lieu of vocational expert testimony. Specifically, Plaintiff contends that the ALJ made a conclusory reference to the Ruling without explaining how it specifically related Plaintiff's work-related limitations to the occupational job base. The Government, in response, argues that the ALJ abided by Acquiescence Ruling (AR) 01-1(3) by explaining that pursuant to SSR 85-15, Plaintiff was able to meet the basic mental demands of unskilled work and that, therefore, his reliance on the Grids as guidance to find that Plaintiff was not disabled was reasonable. The Court agrees that the record does not demonstrate that the ALJ properly explained the "fit" between the facts of this case and the way in which SSR 85-15 dictates that Plaintiff's specific mental limitations impact her ability to work.

The United States Court of Appeals for the Third Circuit has held that it is improper for an ALJ to rely *solely* on the Grids at Step Five to determine whether a claimant could perform

any substantial gainful activity where that claimant had nonexertional limitations. See Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). The Court explained that "in the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines [alone]." Id. at 261. After Sykes, the SSA issued Acquiescence Ruling 01-1(3), directing that where an individual has a nonexertional limitation, an ALJ cannot rely exclusively on the Grids as a framework for decision-making and must instead:

> (1) Take or produce vocational evidence, such as from a vocational expert, the DOT, or other similar evidence (such as a learned treatise); or
>
> (2) Provide notice that [the ALJ] intend[s] to take or [is] taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational base, and allow the claimant the opportunity to respond before [] deny[ing] the claim.

AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.).

The SSA, however, carved an exception explaining that the Ruling did not apply to claims where an ALJ relies on an SSR "that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects the claimant's occupational job base." Id. If an ALJ chooses to rely on an SSR to support the finding

that jobs exist in the national economy that an individual can perform, he or she must cite to the SSR in the determination or decision.  Id.

Accordingly, in a case where a claimant suffers exclusively from nonexertional limitations, it is not necessarily improper for an ALJ to forego vocational expert testimony at Step Five and use the Grids as a framework for decision-making while relying upon an SSR to determine a claimant's occupational job base.  See Allen v. Barnhart, 417 F.3d 396, 404 (3d Cir. 2005). Pursuant to Allen, however, an ALJ may not rely on a ruling "in summary fashion" without providing an explanation of how a claimant's particular work-related limitations is addressed by a specific aspect of that ruling.  See id. at 404.  A "conclusory reference" to a ruling will not suffice.  Id. at 406.  Instead, an ALJ must demonstrate a "fit between the facts of a given case, namely the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the base."  Id. (internal quotations omitted).  Indeed, the Third Circuit stated that "it must be *crystal-clear* that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational job base."  Id. at 407 (emphasis added).

In the present case, the ALJ concluded that Plaintiff had the RFC to perform a wide range of work at all exertional levels

and could perform the basic mental demands of unskilled work. (R. 21-25). In doing so, he relied on SSR 85-15 in conjunction with Section 204.00 of the Grids as a framework for decision-making. (R. 25). The purpose of SSR 85-15 is to provide a "framework for decisions concerning persons who have only a nonexertional limitation(s) of function." SSR 85-15, 1985 WL 56857 at *1 (1985). It contains "hypothetical examples of persons with nonexertional impairments and the effect of those limitations on their ability to perform certain types of work." Rivera v. Astrue, 2009 WL 1065920, at *9 (W.D. Pa. Apr. 20, 2009).

In relying on SSR 85-15 at the last step of his analysis, the ALJ recited the following:

> Social Security Ruling 85-15 states that the basic mental demands of competitive, remunerative, unskilled work include the abilities to understand, carry out and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting on a sustained basis.

(R. 25). The ALJ then concluded:

> [t]he evidence in this case shows that claimant's documented mental limitations do not result in deficits which would preclude the performance of competitive remunerative work requiring the ability to understand, carry out, and remember simple instructions and perform simple tasks.

(Id.) The ALJ further found that Plaintiff's:

> ability to perform work at all exertional levels has been compromised by nonexertional limitations.

However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of Section 204.00 in the Medical-Vocational Guidelines. Thus, administrative notice is taken that there are jobs in existence in significant numbers in the national economy that the claimant would be able to perform.

(Id.)

Plaintiff contends that the ALJ's reliance on SSR 85-15 was improper because he did not explain how Plaintiff's particular mental limitations relate to any of the categories or examples set forth in SSR 85-15. See Meyler v. Commissioner of Social Security, 238 Fed. Appx. 884, 890 (3d Cir. 2007). The Court agrees.

The ALJ's citation to SSR 85-15 was solely for the purpose of defining the mental demands of unskilled work. Beyond a brief recitation of the three requirements of unskilled work, there was no further discussion of SSR 85-15 in his determination. Although the ALJ was entitled to rely on SSR 85-15 as a substitute for an individualized determination by a vocational expert, he was required to do more than make a generalized citation to the Ruling. See Allen, 417 F.3d at 405 (determination not supported by substantial evidence where ALJ's "conclusion [at the last step] only addresse[d] in general fashion the mental limitations for simple, routine, repetitive work"). The

ALJ must demonstrate the "fit between the facts of [the particular] case, namely, [Plaintiff's] specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the case." Id. at 406. Merely making reference to SSR 85-15 "does not end the inquiry." Fahy v. Astrue, 2008 WL 2550594 at *6 (E.D. Pa. June 26, 2008). The ALJ must reference a specific "aspect of SSR 85-15 that relates [Plaintiff]'s particular nonexertional limitations to the occupational job base." Allen, 417 F.3d at 405-06. This is because SSR 85-15 is "a ten-page ruling that specifically addresses the relationship of different mental impairments to job activity." Allen, 417 F.3d at 404.

In Allen, the ALJ similarly used Section 204 of the Grids as a framework for decision-making while relying on SSR 85-15 to reach a determination of non-disability. At the last step of his analysis, he concluded:

> The claimant has a college education and a semi-skilled work background. The claimant is capable of performing a full range of unskilled work at all exertional levels. A finding of not disabled was reached by application of medical-vocational rule 204, Appendix 2, subpart P, Regulations Part 404, used as a framework for decisionmaking.
> The mental limitations for simple, routine, repetitive work do not significantly erode the base of jobs that claimant is capable of performing (SSR 85-15).

Allen, 417 F.3d at 400.

The Third Circuit held that substantial evidence did not support the ALJ's determination because his conclusion "fail[ed] to focus on any of the claimant's work-related limitations." Id. at 404. His conclusion "only addresse[d] in general fashion the mental limitations for simple, routine, repetitive work" and did not "reference any aspect of SSR 85-15 that relate[d] Allen's particular nonexertional limitations to the occupational job base." Id. at 405 (internal quotations omitted). In relying on SSR 85-15, the ALJ in Allen did not expressly discuss the claimant's limitations relating to stress and his response to supervision in determining he had the ability to perform simple tasks in jobs that exist in significant numbers in the national economy. See id. at 407. Consequently, the court found it difficult to determine how Allen's "mental limitations for simple, routine, repetitive work . . . fit into the various categories or examples set forth in SSR 85-15." Id. at 406.

In Meyler, the court held that the ALJ's determination was not supported by substantial evidence because the ALJ similarly failed to explain why "under SSR 85-15 . . . [the claimant]'s nonexertional impairments did not prevent her from meeting the mental demands of unskilled work." 238 Fed. Appx. at 890. The ALJ in Meyler also failed to relate the claimant's "particular

mental impairments [] to the categories or examples in SSR 85-15." Id.

Likewise, in Fahy, the ALJ determined that the claimant retained sufficient attention and concentration and was able to understand, remember, and follow instructions, but was limited to unskilled work. 2008 WL 2550594, at *3. At Step Five of his analysis, the ALJ stated in "summary fashion that the claimant's ability to perform work at all exertional levels is not significantly compromised by her nonexertional limits." Id. at *6. The court found that his determination was not supported by substantial evidence because he "failed to discuss any of [the claimant]'s limitations or how SSR 85-15 is probative of the way in which these limitations impact plaintiff's ability to work." Id.

Similarly, the ALJ in the present case concluded that Plaintiff's mental limitations did not preclude her from performing unskilled work "requiring the ability to understand, carry out and remember simple instructions and perform simple tasks," but remained silent as to exactly what "[Plaintiff]'s documented mental limitations" were and why they did not prevent her from meeting the mental demands of unskilled work under SSR 85-15. (R. 25). He failed to set forth how her specific mental

limitations "fit into the various categories or examples set forth in SSR 85-15."[1] <u>Allen</u>, 417 F.3d at 406.

Moreover, notwithstanding the fact that SSR 85-15 clearly sets forth three separate requirements in defining the mental demands of unskilled work, the ALJ completely failed to discuss Plaintiff's ability to perform the last two requirements which include the ability to "respond appropriately to supervision, coworkers, and usual work situations" and "to deal with changes in a routine work setting on a sustained basis." SSR 85-15, 1985 WL 56857, *4. Despite the fact that Plaintiff was found moderately limited in her ability to "accept instructions and respond appropriately to criticism from supervisors" and "respond appropriately to changes in the work setting" in the State Agency assessment, discussion regarding Plaintiff's ability to meet these demands is glaringly absent from the ALJ's conclusion at the last step of his analysis. (R. 206).

Furthermore, the medical reports from Dr. Uran and Dr. Meyer diagnosed Plaintiff with panic disorder with agoraphobia, and included a note that stated that missed work would be likely due to her agoraphobia. (R. 181).

---

[1] The Court notes that SSR 85-15 does not address Plaintiff's specific work-related limitations with respect to her depression and panic disorder with agoraphobia and how such limitations impact her occupational base.

While the ALJ's RFC assessment does note Plaintiff's "fear of leaving her home," "fear of situations," and the fact that she experiences "paranoid thoughts," these limitations, including the likelihood of missed work, are not discussed at all by the ALJ at Step Five with respect to how they impact her occupational job base. The ALJ did not explain how anything in SSR 85-15 dictated how these particular mental limitations would affect Plaintiff's ability to work. See Meyler, 238 Fed. Appx. at 890 (noting that the ALJ at the last step in his analysis failed to "expressly consider [the claimant's] alleged anxiety when in public places or working near other people").

In finding that Plaintiff's mental debility is not as significant as alleged, the ALJ relied heavily on the fact that Plaintiff was able to take college classes and earn a 3.9 GPA. (R. 23). Plaintiff, however, must be driven to her classes by her parents, who must then wait outside her classroom door in order for her to feel comfortable enough to attend her courses. (R. 22). She attends only one course on campus, and takes another course online. (R. 21-22). The ALJ failed to account for how these factors

affect her ability to perform unskilled work in his conclusion at Step Five.[2]

In sum, the ALJ's citation to SSR 85-15 was conclusory and only for the purpose of defining the basic mental demands of unskilled work. The ALJ failed to set forth properly how any specific aspect of SSR 85-15 addresses Plaintiff's particular mental limitations. He did not reference any of the "categories or examples listed in SSR 85-15, and made no effort to explain how Plaintiff's specific impairments would impact her ability to perform unskilled work." Rivera, 2009 WL 1065920, at *11. Additionally, his failure to address Plaintiff's ability to perform two out of the three mental requirements of unskilled work at the last step, in addition to his failure to discuss how Plaintiff's panic disorder with agoraphobia affects her occupational job base, prevents this Court from concluding that substantial evidence supports his determination that Plaintiff has the ability to perform simple, routine, and repetitive tasks in jobs that exist in significant numbers in the national economy.

Finally, the Court notes that where notice is not given that an agency intends to "rely on the rules as a substitute for

---

[2] The Court notes that the proposition that Plaintiff's moderate limitations were "already captured" when the ALJ limited her to unskilled work has been rejected by several courts. See Fahy, 2008 WL 2550594 at *6; see also Rivera, 2009 WL 1065920, at *11.

individualized determination", a court must give "close scrutiny to the ALJ's reliance on a Ruling as satisfying the Commissioner's burden at Step 5." Allen, 417 F.3d at 407-08.[3] Against this backdrop, the ALJ's generalized citation to SSR 85-15 will not suffice.

## V.    Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ's determination that Plaintiff can perform the mental demands of unskilled work is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case.   The Court hereby remands this case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:    Counsel of record

---

[3] The Third Circuit has recognized that "as a matter of fairness, alerting a claimant to the relevant rule in advance will always be appropriate."   Allen, 417 F.3d at 407.